# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| GNLV, CORP., | Case No. 2:14-cv-00048-GMN-PAL |
| Plaintiff, | REPORT OF FINDINGS AND RECOMMENDATION |
| v. | (Mtn for Default – Dkt. #47) |
| SOUTHEAST AMUSEMENT, INC., et al., | (Mtn for Perm. Inj. – Dkt. #48) |
| Defendants. | (Mtn to Set Aside Default – Dkt. #64) |

This matter is before the court on Defendants Kenneth R. Kampf, Sr.'s and Bonnie R. Kampf's[1] Motion to Set Aside Default (Dkt. #64), Defendants Southeast Amusement's and Wilson's Joinder (Dkt. #66) to the Motion to Set Aside, Plaintiff GNLV, Corp.'s Response (Dkt. #73), and Southeast Amusement's and Wilson's Reply (Dkt. #74). These matters were referred to the undersigned for findings of fact and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

## BACKGROUND

Plaintiff GNLV is a Nevada corporation that operates the Golden Nugget resort hotel casinos in Las Vegas, Nevada, and Laughlin, Nevada. On January 10, 2014, GNLV filed the Complaint (Dkt. #1), asserting claims for trademark infringement and counterfeiting under 15 U.S.C. § 1114, unfair competition under 15 U.S.C. § 125(a), common law trademark infringement, deceptive trade practices under NRS 598.093, and intentional interference with prospective economic advantage against Defendants Southeast Amusement, Bar of Gold, and Mikol Wilson. Specifically, the Complaint alleged Defendants Southeast Amusement and Bar of

---

[1] Both Kenneth R. Kampf, Sr., and Bonnie R. Kampf are named as Defendants in their capacities as Trustees of the Kenneth R. Kampf, Sr., and Bonnie R. Kampf Revocable Living Trust. The court will refer to them simply as the Kampfs.

Gold own and operate an illegal gaming hall out of a warehouse facility in Alvin, Texas. *Id.* at ¶ 5. The Complaint alleged Defendant Wilson owns and controls Defendants Southeast Amusement and Bar of Gold. *Id.* The Clerk of Court issued Summons (Dkt. #7), and GNLV served these Defendants on January 16, 2014. *See* Summons Returned Executed (Dkt. ##12-14).

On February 11, 2014, the district judge held a hearing and granted Plaintiff's Motion for Preliminary Injunction. *See* Minutes of Proceedings (Dkt. #15) and Preliminary Injunction (Dkt. #17). Defendants Wilson and Southeast Amusement filed an Answer and Crossclaim (Dkt. #19) on February 23, 2014, and an Amended Answer and Amended Crossclaim (Dkt. #22) on March 3, 2014.

On March 28, 2014, Plaintiff filed an Amended Complaint (Dkt. #28) with leave of court, asserting claims for trademark infringement and counterfeiting under 15 U.S.C. § 1114; unfair competition under 15 U.S.C. § 125(a); common law trademark infringement; deceptive trade practices under NRS 598.093 et seq.; intentional interference with prospective economic advantage against Defendants Bar of Gold, Robert Hutchinson, Southeast Amusement, Wilson, and the Kampfs and contributory infringement against the Kampfs. The Amended Complaint alleges that Robert Hutchison owns and operates Bar of Gold, and the Kampfs are the record owner of the real property where the Defendants operated their illegal gambling establishment. *See* Amended Complaint at ¶¶ 6, 9. The Clerk issued Summons (Dkt. ##34) for Hutchison and the Kampfs, and Plaintiff served process the Kampfs on April 24, 2014, and on Hutchison on May 8, 2014. *See* Summons Returned Executed (Dkt. ##37, 38, 40).

Defendants Robert Hutchinson, Bar of Gold, and the Kampfs did not file an answer or make an appearance, and on June 26, 2014, Plaintiff applied for entry of Clerk's default. *See* Motions (Dkt. ##43, 44, 45). On June 27, 2014, the Clerk entered default against these Defendants. *See* Clerk's Entry of Default (Dkt. #46). On July 30, 2014, the Kampfs appeared in this case and filed a Motion to Set Aside Default (Dkt. #64).

///

///

///

**DISCUSSION**

I. **The Parties' Positions.**

    A. **The Kampf's Motion to Set Aside Default (Dkt. #64).**

The Kampfs request an order pursuant to Rule 55(c) of the Federal Rules of Civil Procedure setting aside the Clerk's entry of default and denying Plaintiff's Motion for Default Judgment and Motion for Permanent Injunction. The Kampfs reside in Pearland, Texas, and own a number of warehouses in Alvin, Texas, one of which was leased to Defendant Robert Hutchinson for one year, beginning around March 1, 2013. *See* Declaration of Bonnie Kampf, attached to Motion to Set Aside as Exhibit 1, at ¶ 4. Plaintiff alleges the trademark infringement described in the Amended Complaint occurred during the time of Hutchison's tenancy. *See generally* Amended Complaint. The Kampfs assert they only acted as Hutchison's landlord, and Hutchison had full control of the property. Kampf Declaration at ¶ 8. They had no interest in Hutchison business, and they were unaware he used the Plaintiff's trademark. *Id.* In addition, the lease Hutchison signed obligated him to comply with all laws and indemnify the Kampfs against any claims. *Id.* at ¶ 9. Hutchison no longer leases the Kampfs' warehouse in Alvin, Texas. *Id.* at ¶ 4.

The Kampfs assert that on April 24, 2014, they were served with the Amended Complaint. *Id.* at ¶ 5. They asked Hutchison about it, and he assured that he and his attorney would take care of the case, and the Kampfs did not need to take any action. *Id.* In late June 2014, the Kampfs received discovery exchanged between the parties, and Mrs. Kampf spoke with Hutchison, and he assured her his attorney was handling this case, and the Kampfs did not need to do anything. *Id.* at ¶ 6. When the Kampfs received papers related to a potential default taken against them on July 12 and 14, 2014, they called Hutchison, but could not reach him. *Id.* at ¶ 7. On July 21, 2014, they met with a local attorney in Texas, and that attorney contacted Eric Olson, an attorney at the law firm Gordon Silver in Las Vegas, Nevada. *Id.* On Friday, July 25, 2014, the Kampfs retained Gordon Silver and paid a retainer. *Id.* On Monday, July 28, 2014, Mr. Olson contacted Plaintiff's counsel, Laraine Burrell, and requested Plaintiff set aside the default; Ms. Burrell said she had to get consent from her client. *See* Declaration of Eric R.

Olson, attached to Motion to Set Aside as Exhibit 2, at ¶ 5. Within eleven minutes of that phone call, Ms. Burrell had prepared and filed a Notice of Non-Opposition (Dkt. #59) to Plaintiff's Motion for Default and Motion for Permanent Injunction, and Ms. Burrell did not call him back. *Id.* at ¶ 6.[2]

### B. Plaintiff's Opposition (Dkt. #73).

Plaintiff contends the Kampfs did not address the required factors the court should consider in deciding whether to set aside the default. Moreover, Plaintiff argues that the Kampfs' culpable conduct caused the default to be entered. Plaintiff argues that the Kampfs are sophisticated businesspeople and property owners, and they knew they must respond to the Amended Complaint and deliberately failed to do so. Second, Plaintiff asserts that the Kampfs have not asserted a meritorious defense. They admitted owning the warehouse where Plaintiff's mark was allegedly infringed, and they benefitted financially from permitting the Bar of Gold to be operated from their property. In addition, setting aside the default would prejudice Plaintiff because Plaintiff has "already spent the time and resources proving entitlement to a preliminary injunction," and Plaintiff would have to re-litigate the issue it has already proven—that it is likely to succeed on the merits of its claims at trial.

### C. Southeast Amusements' Reply (Dkt. #74).

Southeast Amusement objects to the Plaintiff's representations in the Opposition that "all the Defendants were communicating and strategizing as to how they could avoid liability for their infringing activity," and the Defendants are "colluding" against Plaintiff. The court will not address this dispute, as it is irrelevant to the Motions pending before the court.

## II. **Applicable Law & Analysis.**

Rule 55(c) of the Federal Rules of Civil Procedure provides that the court may set aside an entry of default for good cause. Fed. R. Civ. P. 55(c). To determine good cause, the court

---

[2] Plaintiff disputes this. Ms. Burrell asserts that she prepared the Notice of Non-Opposition on July 28, 2014, and when Mr. Olson called her to set aside the default, the Notice was "already in the queue to be filed." Ms. Burrell asserts that because Mr. Olson could not articulate a "good reason" why the default should be set aside, the Notice of Non-Opposition was allowed to be filed. *See* Declaration of Laraine M. I. Burrell, attached to Opposition as Dkt. #73-1.

must consider three factors: (a) whether the party seeking to set aside the default engaged in culpable conduct leading to the default; (b) whether the movant lacks a meritorious defense; or (c) whether setting aside the default would prejudice the other party. *See United States v. Signed Personal Check No. 730 of Yubran S. Mesle,* 615 F.3d 1085, 1091 (9th Cir. 2010) (citing *Franchise Holding II v. Huntington Restaurants Group, Inc.,* 375 F.3d 922, 925-26 (9th Cir. 2004)). The standard is disjunctive, and if any of the factors is true, setting aside the default is not appropriate. *Id.* The movant bears the burden of showing these factors weigh in favor of setting aside the default, but the burden is "not extraordinarily heavy." *Id.* The Ninth Circuit has found that it is "crucial" for courts to remember that "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Id.* (citing *Falk v. Allen,* 739 F.2d 461, 463 (9th Cir. 1984); *Latshaw v. Trainer Wortham & Co., Inc.,* 452 F.3d 1097, 1103 (9th Cir. 2006); *Speiser, Krause & Madole P.C. v. Ortiz,* 271 F.3d 884, 890 (9th Cir. 2001); *TCI Group Life Ins. Plan v. Knoebber,* 244 F.3d 691, 695-98 (9th Cir. 2001) *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner,* 532 U.S. 141 (2001)). Although the same test applies for a motion seeking relief from the entry of default under Rule 55(c) and default judgment under Rule 60(b), the test is "more liberally applied in the Rule 55(c) context" because there is no interest in the finality of the judgment. *Id.* at 1091 n.1 (internal citations omitted).

**1. Culpability of the Kampfs' Conduct.**

A defendant's conduct is culpable if he received actual or constructive notice of the filing of the action and intentionally failed to answer. *Id.* at 1091 (citing *TCI Group,* 244 F.3d at 697). The Ninth Circuit has explained that "intentionally" in this context does not simply mean the movant made a conscious choice not to answer. *Id.* Rather, to treat a failure to answer as culpable, the movant must have acted in bad faith by, for example, intending to take advantage of an opposing party, interfere with judicial decision-making, or otherwise manipulate the legal process. *Id.* (citing *TCI Group,* 244 F.3d at 697). The Ninth Circuit has typically held a defendant's conduct culpable in this context where "there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id.* (citing *TCI*

*Group,* 244 F.3d at 698). Simple carelessness is insufficient to treat a negligent failure to respond as inexcusable, at least without a showing that other factors, like prejudice, weigh heavily in favor of denying the motion to set aside default. *Id.* (citing *Pioneer Inv. Svs. Co. v. Brunswick Associates Ltd.,* 507 U.S. 380, 388, 394-95 (1993); *TCI Group,* 244 F.3d at 696-97; *Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009).

Plaintiff asserts that because the Kampfs are business people and property owners, they were sufficiently sophisticated to know they should have responded to the Complaint and Amended Complaint. The Ninth Circuit has applied a different standard when considering a legally-sophisticated party's culpability. *See Signed Personal Check,* 615 F.3d at 1093 (citing *Franchise Holding II,* 375 F.3d at 924). The *Franchise II* standard applies to entities or individuals who are attorneys, whose counsel receives notice of the pending lawsuit, or who are sufficiently sophisticated in legal matters. *Id.* Plaintiff cites two cases where the *Franchise II* standard was applied, and they are both distinguishable from the instant case. In *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar,* for example, the Ninth Circuit found the defendants' conduct culpable where they ignored the summons and complaint despite frequent conversations with their attorneys during the time to answer and where they filed false affidavits claiming they had not been served. 168 F.3d 347, 350 (9th Cir. 1999). In *Meadows v. Dominican Republic*, the defendants (the Dominican Republic and a publicly run school) conduct was culpable where they had been fully informed of the legal consequences of failing to respond by the United States Department of State and where the Republic was sufficiently sophisticated and experienced in the requirements of American law to protect its interests, based upon its involvement in other cases in United States courts. 817 F.2d 517, 522 (9th Cir. 1987). These cases are factually inapposite, and additionally, in both, the Ninth Circuit was considering the culpability factor in the more stringent Rule 60(b) context. Here, the Kampfs are more like the defendant in *Signed Personal Check*—they are not attorneys, and they were unrepresented at the time the default was taken. Accordingly, the court will apply the *TCI Group* standard.

The Kampfs do not dispute they received notice of the Complaint and the Amended Complaint. However, there is nothing in the record to suggest the Kampfs acted with the bad

faith necessary to find they "intentionally" failed to respond to the Complaint or Amended Complaint, as that term is defined in the Rule 55(c) context. There is nothing in the record to suggest they intended to take advantage of an opposing party, interfere with judicial decision-making, or manipulate the legal process. *See Signed Personal Check,* 615 F.3d at 1091. Culpability in the context of Rule 55(c) is "not simply nonappearance following receipt of notice of the action, but rather conduct which hindered judicial proceedings as to which subject matter jurisdiction was unchallenged." *TCI Group,* 244 F.3d at 698. Here, the record reflects the Kampfs relied on Hutchison's assurances that he and his attorney would handle this lawsuit, which the court finds was reasonable, especially in light of the indemnification clause contained in the lease agreement Hutchison signed. Furthermore, the Kampfs' conduct after they received service of the Motion for Default Judgment and Motion for Permanent Injunction on July 12 and 14, 2014, and could no longer contact Hutchison, also demonstrates their good faith. Within two weeks, the Kampfs had retained counsel in Las Vegas, Nevada, who filed a Notice of Appearance (Dkt. #60) on July 28, 2014, and the Motion to Set Aside Default on July 30, 2014. The court finds this factor weighs in favor of setting aside the default.

**2. Meritorious Defense.**

A defendant seeking to vacate a default judgment must present specific facts that constitute a defense. *Id.* (citing *TCI Group,* 244 at 700). The defendant need only allege sufficient facts that, if true, would be a defense. *Id.* The court should not determine whether the alleged facts are true when deciding a motion to set aside default; that issue should be the subject of later litigation. *Id.*

Plaintiff asserts the Kampfs have not articulated a valid meritorious defense, and their motion only admits they failed to respond. The Kampfs need not assert a meritorious defense as Plaintiff asserts; instead, they must demonstrate facts or law showing a "sufficient defense is assertible." *See TCI Group,* 244 F.3d at 700 (internal citation omitted). The Kampfs assert they are only the owners of the warehouse that Hutchison leased and from which he operated the Bar of Gold, and they were not involved in and had no interest in Hutchison's business. The Kampfs

///

contend Plaintiff's claims arise solely from the alleged misconduct of Hutchison and Bar of Gold.

In order to state a claim for trademark infringement and unfair competition under the Lanham Act, Plaintiff must establish that it is the owner of a valid, protectable mark, and the alleged infringer is using a confusingly similar mark. The Kampfs have alleged sufficient facts that, if true, would be a defense to liability against a direct infringement claim because they have asserted they were not using Plaintiff's mark themselves. In addition, they have stated a defense against any vicarious liability claim because they assert they were not involved in Hutchison's business and had no interest in it. A defendant is liable for vicarious liability where it has the right and ability to control the infringer's acts and receives a direct financial benefit from the infringer. *See Religious Tech. Ctr. v. Netcome On-Line Comm'n Svs., Inc.,* 907 F. Supp. 1361, 1375 (N.D. Cal. 1995). Where a defendant rents space on a fixed rental fee that does not depend on the nature of the activity of the lessee, courts usually find no vicarious liability because there is no direct financial benefit from the infringement. *Id.* In addition, Plaintiff's claim for deceptive trade practices claim requires it to show the Kampfs used Plaintiff's mark in connection with Hutchison's business. The Kampfs' assertion they had no interest in and were uninvolved with is a defense. Whether or not the Kampfs will ultimately succeed on their defenses is not dispositive of this Motion, and the court finds this factor weighs in favor of setting aside the default.

### 3. Prejudice.

To be prejudicial, the setting aside of a default must result in greater harm than simply delaying resolution of the case. *Id.* (citing *TCI Group,* 244 at 701). The standard is whether a plaintiff's ability to pursue its claim will be hindered. *See Falk,* 739 F.2d at 463. Here, Plaintiff's argument of prejudice is that it will be required to prove the claims alleged in the Amended Complaint even though it has already shown it is likely to succeed on the merits. Plaintiff's argument is, essentially, that it will be required to pursue its claim—which weighs against a finding of prejudice. The only prejudice Plaintiff points to is "simply delaying resolution of the case," and this does not warrant refusing to allow this case to be decided on the

merits.  *See Signed Personal Check,* 615 F.3d at 1095.  This factor also weighs in favor of setting aside the default.

The Ninth Circuit's rules for determining when a default should be set aside are "solicitous toward movants."  *See Signed Personal Check,* 615 F.3d at 1089.  The court is cognizant of the Ninth Circuit's preference for deciding cases on the merits and its admonition that default judgment is appropriate only in "extreme circumstances."

In light of these principles, and because all three good cause factors weigh in favor of the Kampfs,

**IT IS RECOMMENDED**:

1. The Motion for Default Judgment (Dkt. #47) be DENIED.
2. The Motion for Permanent Injunction (Dkt. #48) be DENIED.
3. The Motion to Set Aside Default (Dkt. #64) be GRANTED.

Dated this 21st day of November, 2014.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE